UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER ANN RYABOV,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendants.

Case No. 3:16-CV-06001-TLF

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR AWARD OF BENEFITS

Jennifer Ann Ryabov has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses the Commissioner's decision denying benefits and remands for an award of benefits.

FACTUAL AND PROCEDURAL HISTORY

Ms. Ryabov filed an application for disability insurance benefits on May 6, 2013, and another one for SSI benefits on September 12, 2013, alleging in both applications that she became disabled beginning January 20, 2013. Dkt. 11, Administrative Record (AR) 20. Both applications were denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which Ms. Ryabov and a vocational expert appeared and testified. AR 40-85.

ORDER - 1

In a written decision on April 7, 2015, the ALJ found that Ms. Ryabov could perform her past relevant work and therefore was not disabled. AR 20-34. The Appeals Council denied Ms. Ryabov's request for review on October 7, 2016, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Ryabov then appealed that decision in a complaint filed with this Court on December 14, 2016. Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Ryabov seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred:

(1)  in not finding certain conditions to be severe impairments;

(2)  in evaluating the medical evidence;

(3)  in discounting Ms. Ryabov's credibility;

(4)  in assessing Ms. Ryabov's residual functional capacity; and

(6)  in finding Ms. Ryabov could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ erred in discounting Ms. Ryabov's testimony on her subjective symptoms, and therefore in assessing her RFC and finding her not disabled. Accordingly, the Court reverses the decision to deny benefits and remand this matter for further administrative proceedings.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*. At issue here is the ALJ's weighing of different pieces of medical evidence, his determination at step two that certain conditions are not severe impairments, his discounting of Ms. Ryabov's testimony on her subjective symptoms, and

ORDER - 2

his resulting assessment of Ms. Ryabov's RFC and conclusion that she can perform jobs in the national economy.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 2017 WL 4053751, at *6 (9th Cir. Sept. 14, 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Step Two Determination</u>

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. §§ 404.1520, 416.920. In this case, the ALJ determined that Ms. Ryabov had three severe impairments: trigeminal neuralgia, migraines, and obesity. AR 22.

Ms. Ryabov contends that the ALJ erred in failing to find anxiety, depression, and episodes of syncope to be severe impairments at step two. She argues that the ALJ performed only a cursory analysis of her impairments that ignored medical evidence showing she suffered from anxiety and depression and that they limited her ability to work. *See* AR 358, 368-69, 373, 386, 403, 405-09, 416, 453, 457, 461, 465, 482. She also contends the ALJ ignored evidence that

syncope was a severe impairment. AR 345-47, 361, 364, 428, 465, 481, 495, 565. The Court disagrees, and holds that the ALJ's decision concerning severe impairments at step two was correct. Even assuming, for purposes of argument, that any of the errors alleged by Ms. Ryabov had occurred, such error would have been harmless.

An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); SSR 85- 28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC).

The court noted that in assessing a claimant's RFC an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck,* 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be *exactly the same* regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis added).

1  The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two
2  in the claimant's favor and was required to consider all impairments in the RFC, whether
3  "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand."
4  *Buck*, 869 F.3d at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

Because the ALJ decided step two in Ms. Ryabov's favor, the ALJ was required to consider evidence of her anxiety, depression, and syncope in assessing her RFC. Ms. Ryabov does not contend that he failed to do so, and the ALJ's decision indicates that he did consider those conditions. *See* AR 29, 30 (weighing medical opinions about Ms. Ryabov's depression and anxiety and noting "complaints of syncope and trigeminal neuralgia symptoms" in limiting Ms. Ryabov to light exertional work with additional restrictions). Thus, even if the Court assumes that the errors alleged by Ms. Ryabov occurred, any error by the ALJ in failing to find anxiety, depression, or syncope to be "severe" at step two would have been harmless. *See Buck*, 869 F.3d at 1049.

## II. The ALJ's Assessment of Ms. Ryabov's Subjective Testimony

The ALJ determined that "[t]he testimony and statements of the claimant concerning the severity of the claimant's impairments are deemed only partial [sic] credible based on the claimant's activities of daily living, her work history and the overall medical record, including an unremarkable imaging of the claimant's brain, improvement in headache symptoms with Botox and inconsistencies between the claimant's testimony and the medical evidence of record. . ." AR 26. Ms. Ryabov argues that the ALJ failed to evaluate the medical evidence in a fair manner; that the ALJ did not accurately assess her work history; and that the ALJ mistakenly concluded that her activities of daily living were inconsistent with the symptoms and severe limitations that she reported. The Court agrees with Ms. Ryabov and holds that the record as a whole does not

support the ALJ's finding that the medical evidence is inconsistent with Ms. Ryabov's subjective reports of symptoms.

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). An ALJ must consider objective medical evidence of the impairment and determine whether that evidence "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ can only reject a claimant's symptom testimony, when there is no evidence of malingering, if the ALJ gives reasons that are "specific, clear and convincing." *Lingenfelter,* at 1036. An ALJ cannot reject a claimant's pain testimony solely on the basis of a lack of objective medical evidence in the record. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995). Such a determination can satisfy the clear and convincing requirement when the ALJ "specif[ies] what complaints are contradicted by what clinical observations." *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998); *see also Lester*, 81 F.3d at 834.

Even if evidence shows that the claimant received some relief from pain by tolerating treatment, the Court must review the evidence in light of the claimant's overall health. *See Lester*, 81 F.3d at 833 (observing that where the record shows occasional time periods where the claimant's pain is well-managed, those time periods are not inconsistent with disability because the Commissioner must evaluate the claimant's "ability to work on a *sustained* basis" (emphasis in original)) . If the record as a whole shows the claimant's overall health is characterized by severe pain, then evidence that the claimant's pain was sporadically alleviated or lessened is not

a specific, clear, and convincing reason for an ALJ to reject the claimant's credibility. *Laborin v. Berryhill,* 692 Fed. App'x 959, 961 (9th Cir. 2017).

It is important to be mindful that a reviewing Court should not "second-guess" the ALJ's assessment of the claimant's credibility. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse an ALJ's assessment of the claimant's credibility where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. As long as substantial evidence supports the credibility determination, the Court should uphold the ALJ's evaluation of credibility regardless whether some of the bases are supported but others are erroneous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

In this case, Ms. Ryabov testified that she experiences trigeminal neuralgia that causes severe, constant facial pain every day. This shocking, intense facial pain prevents her from socializing; due to this condition, she is unable to lead a normal life. AR 52-54, 59-60. She estimated that medications work only 20 percent of the time and stated that they cause severe side effects. AR 54-57 (tremors, nausea, memory loss, dizziness, sudden loss of consciousness that leads to falling). She testified that she sleeps most of the day and does little when awake other than watching television, playing computer games, and spending time with her dog. AR 69-71.

First, the ALJ found that consultative examiner Dr. David Dixon's note showed Ms. Ryabov left her last job, as a cashier at Bremerton Naval Shipyard, because of a sexual assault incident "rather than as a result of physical or mental conditions," and that this undermines her disability claim. AR 31; *see* AR 446.

Ms. Ryabov points out that, five months before Dr. Dixon's evaluation, Dr. John Haroian evaluated Ms. Ryabov because she was complaining of anxiety and depression due to childhood

sexual abuse. AR 414. Dr. Haroian noted the sexual assault incident and found that it triggered PTSD in Ms. Ryabov because of her childhood abuse, in turn causing Ms. Ryabov to feel unsafe at work. *Id.* However, the ALJ gave little weight to Dr. Haroian's opinion, and Ms. Ryabov does not challenge that determination. AR 30.

A claimant leaving work for non-disability reasons can be a valid reason to discount the claimant's testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In *Bruton*, which the Commissioner cites, the Ninth Circuit upheld an ALJ's credibility finding where the claimant "left his job because he was laid off, rather than because he was injured," "waited nine months after he was laid off before seeking any medical attention," and "failed to seek treatment despite his complaints of severe pain." 268 F.3d at 828. Here, it is not clear from the record when Ms. Ryabov left her job at the commissary, and the ALJ failed to make a record on that question.[1] Moreover, the latter two factors from *Bruton* are not present here: Ms. Ryabov sought treatment throughout the disability period, both before and after she allegedly quit her job. *See* AR 347, 399, 495, 500, 512, 540, 549, 560, 568, 574, 578, 593. Even if the ALJ is correct that Ms. Ryabov's reason for leaving her prior job was not related to her disability, the ALJ could not reasonably find Ms. Ryabov's testimony non-credible due to that single, purported inconsistency.

Second, the ALJ found that Ms. Ryabov's daily activities are less limited than Ms. Ryabov's "complaints of disabling symptoms and limitations" would otherwise suggest. AR 32. The ALJ noted that Ms. Ryabov lives alone and can manage her self-care; that she "prepares

---

[1] *See* AR 47-49. An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan*, 242 F.3d at 1150 (citations omitted). The ALJ did not note a date for Ms. Ryabov's departure, nor did Dr. Dixon. AR 31, 446. The Commissioner asserts it was in March 2013. Dkt. 18, p. 8. Dr. Heber wrote that month that Ms. Ryabov "works" at the commissary. AR 345. But Dr. Haroian reported in July 2013 that Ms. Ryabov had not worked in six months. AR 406. And when the ALJ asked at the November 2014 hearing when Ms. Ryabov last worked, she told him only that she did some dog-sitting in March 2013. She did not mention the commissary, and the ALJ did not ask about it. AR 47-49.

simple meals, wipes counters and does minimal dishes;" that she can manage her money and go to church once a week; that she rides in cars "and shops for food on[c]e a week for 1.5 to two hours;" that she spends time with a friend and "goes outside a couple of times per week;" and that she reported working toward a degree in social services in August 2013. AR 31-32; *see* AR 243-50, 251-58, 446.

These are not sufficient reasons to discount the credibility of Ms. Ryabov's symptom testimony. The Ninth Circuit recently rejected an ALJ's credibility finding based on the claimant's childcare responsibilities, reasoning:

> [T]here is almost no information in the record about Trevizo's childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations. Moreover, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. That appears to be the case here, where Trevizo's childcare responsibilities permit her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job.

*Trevizo*, 2017 WL 4053751, at *12.

Even if the record supports the ALJ's characterization of Ms. Ryabov's activities, they are not the kind that are "'easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The vocational expert testified that if someone with Ms. Ryabov's characteristics needed an extra ten-minute break during the workday, it would preclude her employment. AR 77-78. Preparing a simple meal once a day and wiping the counters, attending to personal hygiene, and shopping for food once a week do not show an ability to maintain full-time employment; nor does Ms. Ryabov's ability to attend church and go outside once or twice per week.

The record appears to contain only one reference to Ms. Ryabov's statement that she was

ORDER - 9

near completing a social services degree. *See* AR 446. It contains no further information that would support the ALJ's inference that Ms. Ryabov's activities in pursuing that degree were inconsistent with her claimed symptoms: whether the program was full- or part-time, whether it was in-class or online, how much work it required and of what kind. The ALJ did not develop a record on the issue. *See Tonapetyan*, 242 F.3d at 1150.

Third, the ALJ found that the medical record did not support the severe impairments Ms. Ryabov alleges. AR 32. The ALJ mentioned that Ms. Ryabov had received only minimal treatment for her alleged mental impairments, and had never been hospitalized. AR 32. With respect to Ms. Ryabov's physical impairments, the ALJ found that the medical record showed Ms. Ryabov's subjective claims to be "disproportionate to the objective and clinical findings." He pointed specifically to: "a normal EEG and MRI;" Botox treatment that dulled Ms. Ryabov's headaches; and surgery that provided "initial relief" to Ms. Ryabov's trigeminal neuralgia. AR 27-28, 32. The ALJ also stated that he

> questions whether the claimant suffers from such symptoms based on her response to questioning at hearing. For example, when the undersigned asked the claimant the last time memory loss had caused her to miss an appointment, she stated the last example was more than six months prior. When questioned about dizziness, she described a fall at Fred Meyers, but her discussion of such indicated she quickly got back up without store staff being alerting [sic], suggesting that perhaps such incident was fairly inconsequential.

AR 28.

The record does not support the ALJ's finding that the medical evidence is inconsistent with Ms. Ryabov's subjective reports of symptoms. Instead, the ALJ appears to have "cherry picked" three items from a lengthy medical record that largely supports Dr. Kathleen Polo's opinion that Ms. Ryabov cannot work. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding "the ALJ improperly cherry-picked some of [the doctor's] characterizations of

[the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment") (citations omitted).

Ms. Ryabov first reported facial pain in January 2013. The next month, Dr. Kari Heber noted Ms. Ryabov was experiencing syncope and loss of consciousness. AR 347. Notes from Dr. Polo between June 2013 and October 2014 show Ms. Ryabov reporting fluctuating, but constant, symptoms from trigeminal neuralgia and frequent migraines, which Dr. Polo linked to her episodes of losing consciousness. *See* AR 483, 495, 500, 512, 540, 560, 568, 574, 593. Dr. Ramona N. Ionita evaluated Ms. Ryabov on September 20, 2013 and found obstructive sleep apnea, hypersomnia, sleep apnea, morbid obesity, seizure disorder, and posttraumatic stress disorder. AR 473.

In addition, Dr. Anthony Edward Harris performed neurosurgery at Tacoma General Hospital on Ms. Ryabov on January 13, 2014, after she was hospitalized with extreme facial pain. Dr. Harris made an incision behind Ms. Ryabov's ear and opened her brain to perform a right retromastoid craniectomy for microvascular decompression of cranial nerve five. AR 549, 556, 578, 580-585. He described a surgical procedure that included:

> Further dissection with sharp scissors and Rhoton 6 of the scarred-in arachnoid revealed the fifth cranial nerve. The motor rootlets of this were verified again with motor stimulation. The entirety of the fifth cranial nerve was then dissected free, dissecting quite a bit of thickened and scarred-over appearing arachnoid, which was around the nerve. There was a large vein that sat transversely across the nerve out towards Meckel's cave and superior aspect of likely superior cerebellar artery was followed longitudinally along much of the nerve and this was dissected free with sharp microscissors and the Rotund [sic] 6 instrument. Once the fifth cranial nerve was circumferentially dissected free and visualized all the way back to the root entry zone, several Teflon pledgets were rolled and tucked into place circumferentially around the nerve to pad it from the offending vessels.

AR 580-581. Dr. Harris found two months later that Ms. Ryabov's facial pain had improved though her migraines persisted. AR 552.

ORDER - 11

But by April 2014, Ms. Ryabov was again reporting "considerable pain" in her face. AR 560. According to Dr. Kell's and Dr. Polo's notes, an MRI examination on March 31, 2014, showed "some brightness of the trigeminal nerve along the lateral margin, which is likely to be postoperative but could be inflammatory as well, and that may actually have some answer as to why she is having continued pain." AR 553-554, 560.

In an evaluation on April 24, 2014, Dr. Polo observed: "she pretty much is in pain constantly, some of which again appears to be migrainous, some of which appears to be neuralgic." AR 560. On July 24, 2014, Dr. Polo noted that Ms. Ryabov "continues to have at least daily shooting pains through the trigeminal distribution on the right. She also has migraine headaches, with nausea, vomiting, photophobia and phonophobia. Significant headaches occur 3-4 days a week." AR 568. Dr. Polo's assessment in July 2014 was that Ms. Ryabov suffered from: "Migraine, chronic, manifested by greater than 15 days of headache/month lasting more than four hours, associated with nausea, vomiting, dizziness, photophobia and phonophobia. . . . Facial pain, s/p nerve decompression." AR 572. In an October 2014 treatment note, Dr. Polo observed that trigeminal neuralgia had caused "monumental" changes in Ms. Ryabov's life. AR 593. These physicians' notes on Ms. Ryabov's ongoing chronic migraines and facial pain contradict the ALJ's finding that treatment was proving effective.

Because none of the reasons the ALJ gave were clear and convincing, the ALJ erred in discounting Ms. Ryabov's testimony about her subjective symptoms.

III. Dr. Polo's Medical Opinion

The ALJ also erred in evaluating the medical opinion evidence.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors

such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Id. § 404.1527(c)(2)–(6).

*Trevizo*, 2017 WL 4053751, at *7.

Here, the ALJ failed to weigh the six factors from the SSA regulations in rejecting the opinion of Dr. Polo, Ms. Ryabov's longtime treating physician. AR 29. In particular, the ALJ did not appear to take into account the records discussed above from Dr. Polo's extensive treatment of Ms. Ryabov in evaluating Dr. Polo's brief opinion. *Id.* The ALJ thus erred in this respect, as well.

IV. <u>The ALJ's RFC Assessment</u>

The Commissioner uses a claimant's residual functional capacity (RFC) assessment at step four of the five-step process to determine whether the claimant can do his or her past relevant work, and at step five to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.*

The ALJ found Ms. Ryabov had the RFC:

> **to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally. She can stand and/or walk for a total of about 2 hours in an eight-hour workday and sit for a total of about 6 hours in an eight-hour workday. She can no more than frequently stoop, kneel or crouch. She can no more than occasionally crawl or climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She must avoid even moderate exposure to hazards, such as dangerous machinery, unprotected heights, etc. With customary breaks and lunch, the claimant could complete unskilled, simple, routine tasks. She could do no production pace work but only goal-oriented work.**

AR 24 (emphasis in the original). The ALJ then found Ms. Ryabov could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's

testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as Ms. Ryabov. AR 33, 74-77.

Ms. Ryabov argues that the ALJ erred because the limitations found by the ALJ that he considered to allow for light work do not logically follow from Ms. Ryabov's diagnosed conditions of trigeminal neuralgia, migraines, and obesity. The Court agrees. Because, as discussed above, the ALJ erred in failing to properly evaluate Ms. Ryabov's testimony on the severity of her symptoms and in evaluating Dr. Polo's medical opinion, the RFC above does not completely and accurately describe all of Ms. Ryabov's functional limitations.

The vocational expert testified that a person who has the assessed RFC, but who also requires an additional 10-minute break in the workday, would be unable to maintain a job. AR 77-78. The vocational expert further testified that someone who had that RFC but would be off-task 10 percent of the day or miss two days of work per month would also be unemployable. AR 78-79. Consequently, the hypothetical question the ALJ posed to the vocational expert—and thus that expert's testimony and the ALJ's reliance thereon—were not supported by substantial evidence or free of error.

V. <u>Remand for Award of Benefits</u>

The Court may in its discretion remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292; *see Trevizo*, 2017 WL 4053751, at *13. The Court should remand for additional proceedings where they "'can remedy defects in the original administrative proceeding.'" *Trevizo*, 2017 WL 4053751, at *13 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)). In general, however, the Court should remand for an award of benefits where

> "1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Id.* at *13 & n.11 (quoting *Garrison*, 759 F.3d at 1020).

Here, the Commissioner does not contend that further proceedings are needed if the ALJ committed a reversible error. There is overwhelming objective medical evidence that Ms. Ryabov's condition is severely and consistently painful with searing facial pain and migraine headaches. The pain as well as the treatment she endured affected her life to the point where she cannot sustain any employment. Each element of the credit-as-true test is satisfied: First, further development of the record is unlikely to lead to additional material facts. Second, as discussed above, the ALJ failed to provide sufficient reasons to reject Ms. Ryabov's subjective reports of her symptoms and the ALJ erred in evaluating the medical record. Third, if the Court credits as true Ms. Ryabov's testimony that she suffers constant and severe facial pain as well as migraine headaches and episodes of passing out that prevent her from socializing or leading a normal life, the Commissioner would be required to find that Ms. Ryabov is disabled.

Because the credit-as-true test is thus satisfied and the Commissioner points to no areas requiring development of the record or to factors raising "serious doubt" that Ms. Ryabov is disabled, the Court will use its discretion to remand for the Commissioner to calculate and award benefits. *See Trevizo*, 2017 WL 4053751, at *13.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Ms. Ryabov to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for award of benefits.

Dated this 11th day of October, 2017.

Theresa L. Fricke
United States Magistrate Judge